UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTHONY MARTIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:23-cv-00254-JMS-MKK |
| | ) |
| FRANK VANIHEL, Warden, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Anthony Martin has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] He challenges a disciplinary proceeding in which he was found guilty of assaulting a prison official and sanctioned with a one-credit-class demotion and a 90-day loss of good-time credits. [Filing No. 11-6.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Martin's due process rights and his habeas petition is **DENIED**.

**I.**
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On February 2, 2022, Sergeant E. Angeles charged Mr. Martin with violating Offense A-117, Assault on Staff. [Filing No. 11-1 at 1.] The Conduct Report states:

> On 02/02/2022 at approximately 11:08 AM, I, Sergeant E. Angeles was in the process of removing mechanical restraints from Offender Martin, Anthony (DOC #945288 / SCU A-West #706). Upon the removal of the first mechanical hand restraint, Offender Martin reached out, firmly grasped my left wrist and pulled me into the cell up to my shoulder. He began screaming, "You bitches ain't putting me on strip cell! I got you!" the[n] placed his entire body weight against my left arm in an attempt to break it against the solid metal cuffport. Sergeant Yarber, Sergeant Ashba and Officer Swan then pulled me away from the cuffport, preventing my arm from breaking. This assault did result in me sustaining numerous cuts, abrasions and bruising from Offender Martin's violent actions.

[Filing No. 11-1 at 1.] That same day, Sergeant Ashba, Sergeant Yarber, and Sergeant Swan attested to written witness statements corroborating Sergeant Angeles's account of the incident. [Filing No. 11-2 at 1-3.] The incident was filmed on video, which resulted in a Report of Disciplinary Hearing Video Review ("Video Review"). [Filing No. 11-7.] In relevant part, the Video Review stated that:

> Sgt Angeles['] arms appear[ed] to be pulled into the holding cell through the cuff port. Sgt Yarber and Officer Swan pull[ed] Sgt Angeles back out of the cuff port. . . . Sgt Yarber use[d] the chemical agent. . . . Sgt Ashba open[ed] cuff port, Offender Martin place[d] his right hand out the cuff port . . . . Sgt Yarber remove[d] [Mr. Martin's] restraint.

[Filing No. 11-7 at 2.] A copy of this Video Review was provided to Mr. Martin before his disciplinary hearing. [Filing No. 11-7 at 2.]

Mr. Martin pleaded not guilty and indicated he did "not wish to call any witnesses." [Filing No. 11-4 at 1.] He did, however, request video footage that would "show that [he was] the one who got assaulted. At no time did [he] assault staff." [Filing No. 11-4 at 1.] At the disciplinary hearing, Mr. Martin testified that he felt "it was retaliation. [He] was being sprayed at the time. [He] never grab[b]ed that officer he had a hold of the handcuffs." [Filing No. 11-6 at 1.] Based

2

on staff reports, Mr. Martin's statement, evidence from witnesses, photographs of Sergeant Angeles's injured arm, and video evidence, the Hearing Officer found Mr. Martin guilty. [Filing No. 11-6 at 1.] He was sanctioned with a one-credit-class demotion and a 90-day loss of good-time credits. [Filing No. 11-6.]

Mr. Martin appealed internally and was denied at both levels. [Filing No. 11-8; Filing No. 11-9.] Mr. Martin has now filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. [Filing No. 1.]

### III.
### DISCUSSION

The Respondent argues that Mr. Martin has procedurally defaulted many of his arguments for failure to raise them in prior administrative proceedings. [*E.g.*, Filing No. 11 at 9-13; 21-24.] Before analyzing substantive arguments, the Court must first determine which arguments, if any, are properly before the Court.

####    A.    **Failure to Exhaust and Procedural Default**

The Respondent argues that Mr. Martin failed to exhaust many of his arguments, including video tampering, document falsification, withholding of identity of staff witnesses, and violation of administrative procedural rules, and therefore, Mr. Martin has procedurally defaulted them. [Filing No. 11 at 23-24.] The Respondent also notes that Mr. Martin did not exhaust the argument that "he did not get a reason for his conviction." [Filing No. 11 at 21.]

Mr. Martin did not file a reply.

It is well established that state prisoners must exhaust their available state remedies before challenging a prison disciplinary conviction in federal court. *See Love v. Vanihel*, 73 F.4th 439, 446 (7th Cir. 2023) (citing 28 U.S.C. § 2254(b)(1)(A), (c)). To properly exhaust a claim and "avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts."

3

*Love*, 73 F.4th at 446. Indiana "has no judicial procedure for reviewing prison disciplinary hearings, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies, and presenting legal contentions to each administrative level." *Id.* (quotations and citations omitted).

A petitioner seeking review of defaulted claims has two options. He can show "cause and prejudice for the default" or he can demonstrate that failure to consider the defaulted claims will result in a "miscarriage of justice." *Id.* "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded compliance with the procedural rule." *Id.* (quotation and citation omitted). "This normally means petitioner must show that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable." *Id.* (quotations, citations, and alteration omitted).

To show prejudice, "the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Id.* at 448 (quoting *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022)). To demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016).

In Mr. Martin's administrative appeal, he made the following arguments:

> I'm appealing my DHB decision of 2-23-2022, which I contest that my due process was . . . violated.  The following issues has been violated which the conviction must be "vacated" and reversed.   (1) insufficient evidence; (2) denial of impartial decisionmaker (3) denial of right to present evidence (4) retaliation (5) withholding of evidence (6) denial to call witnesses[.]   On 2-23-2022 my DHB hearing was conducted, which I contested that the video evidence do[es] not support the charge. I told [the hearing officer] that I asked for witnesses statements from Sgt. Sanders, Sgt. Mather, and A-East control officer, which she did not provide[] any of requested witness statements.  The Report of Disciplinary Hearing states that she viewed a photo[] but was never provided to me.  The conduct was already processed, but then later "rescreened" which failed to document any of requested physical evidence and witness statements.  DHS stated her superiors told her to find me guilty, which I was denied a fair hearing!

[Filing No. 11-8 at 1.]

Missing from Mr. Martin's list of arguments are "fraud," "contributory negligence," "miscarriage of justice," and "spoliation of evidence," each of which appears in his Petition but did not appear in his appeal.  [Filing No. 1 at 2-5.]  These arguments were not "fairly presented" during the administrative appeal process, and Mr. Martin has not argued cause and prejudice for his failure to present those arguments.  *Love*, 73 F.4th at 446.  Mr. Martin has procedurally defaulted these arguments, and the Court discusses them no further.  As for the remaining arguments rooted in the procedural protections of *Wolff* and *Hill*, although they are imprecisely argued, they are sufficiently specific for the Court's review.  To the extent there is overlap between defaulted and preserved arguments, it is of little consequence because as the Court will explain, none has any merit.

      **B.**    **Sufficiency of the Evidence**

Although Mr. Martin describes certain grounds as "arbitrary actions" and "contributory negligence," the Court understands the argument to be challenging the sufficiency of the evidence. Specifically, he argues that the officers themselves instigated a charge against him because they were the ones who assaulted him, not the other way around, and that the video showing the contrary was "altered."  [Filing No. 1 at 3.]  Mr. Martin insists that he was simply "placed in a situation [in

5

which] he was being attacked, [and] sprayed with pepper spray several times," and "subjected to unwarranted, intentional, reckless conduct by prison staff that could have amounted to death." [Filing No. 1 at 4.] According to Mr. Martin, this violated IDOC policy regarding the use of force. [Filing No. 1 at 3.] In fact, Mr. Martin insists, "prison officials had a criminal intent to cover up an assault." [Filing No. 1 at 4.]

The Respondent argues that the video and "conduct report establish[] that [Mr.] Martin touched (actually, grabbed) Sgt. Angeles, pulled his arm through the cuff port, and tried to break his arm." [Filing No. 11 at 15.] The Respondent contends that Mr. Martin's claim that the video was doctored is "ludicrous." [Filing No. 11 at 13.] As to Mr. Martin's argument about "contributory negligence," the Respondent states that Mr. Martin "probably means self-defense." [Filing No. 11 at 29.] If so, the Respondent notes that "offenders are not entitled to raise self-defense in disciplinary proceedings." [Filing No. 11 at 29.] As for arbitrariness, fraud, and retaliation, the Respondent argues that as long as procedural due process was otherwise satisfied, "the protection from such arbitrary action is found" in those procedures. [Filing No. 11 at 27-28.]

Mr. Martin did not file a reply.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

The Respondent has filed video footage and photo evidence of the incident for the Court's in camera review: the video footage plainly shows an officer trying to remove Mr. Martin's

handcuffs and then being practically sucked in through the door of Mr. Martin's cell as he grabbed hold of the officer's arm before being pulled free by other officers. [Filing No. 14 at 11:59-12:15.] It then shows another officer spraying a substance in Mr. Martin's cell, presumably to subdue Mr. Martin. [Filing No. 14 at 13:58-14:20.] And then it shows an officer finally removing Mr. Martin's handcuffs. [Filing No. 14 at 16:10-16:25.]

This footage is consistent with the Video Review and the Conduct Report, and directly contradicts Mr. Martin's assertion of self-defense, which in any event he is not entitled to raise. *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) (holding that "inmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings"). Even if the video were frozen at some points, "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).[1] As to the allegation of video tampering, Mr. Martin merely hurls bald assertions that the video was tampered with. But "[w]ithout a specific reason to doubt" the video, the "hearing officer could rely" on it. *Id.* The video alone meets the standard of some evidence, and even if not, the ex parte photograph shows Sergeant Angeles's arm, bruised and scratched from Mr. Martin's assault. [Filing No. 13 at 1.] And even if there were some kind of retaliation plot to assault and convict Mr. Martin – and the Court finds that there was none – his "protection from such arbitrary action is found in the procedures mandated by due process. Because those procedures were satisfied in this case, and the [hearing officer] had 'some evidence' for [her] decision, [Mr. Martin] has no viable constitutional claim." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999).

---

[1] Although the Court did not observe freezing in the material video footage, the parties have mentioned potential video malfunctions generally. [*E.g.*, Filing No. 11 at 15.]

Mr. Martin is not entitled to habeas relief on the ground of insufficiency of the evidence.

### C.   Right to Present Evidence and Withholding of Evidence

Mr. Martin argues that he "was denied physical evidence, [the] right to present the lay-out of the incident area, denied the right to present medical records, . . . denied the right to present staff details of the events," and "denied the right to challenge the video." [Filing No. 1 at 3.]

The Respondent avers that Mr. Martin failed to demonstrate how the supposed evidence would have been exculpatory since, for example, Mr. Martin "does not say what the 'layout' would prove or how it would help him." [Filing No. 11 at 20.] To the extent that Mr. Martin asked for "statements from Sgt. Sanders, Sgt. Mather, and the A-East control officer," the Respondent argues that Mr. Martin "never says, and did not say in the administrative appeal, what these staff could have contributed." [Filing No. 11 at 30.] Further, although Mr. Martin "complained that he did not receive the photographs that the [hearing officer] saw and relied upon," the Respondent argues that those photographs "are clearly not exculpatory." [Filing No. 11 at 25.] And as to Mr. Martin's argument that "prison officials withheld that he was in restraints and handcuffs during the incident," the Respondent notes that the Video Review states that Mr. Martin was "secured in trip gear restraints." [Filing No. 11 at 26.] To the extent Mr. Martin argues that the prison should have retrieved certain evidence, such as from malfunctioning video footage, the Respondent states that "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." [Filing No. 11 at 16].

Mr. Martin did not file a reply.

An inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff*, 418 U.S. at 566. Due process requires prison officials to disclose all material exculpatory evidence, unless that evidence would unduly threaten

8

institutional concerns. *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)).

Among the evidence Mr. Martin states he wished to present – the layout of the incident area, medical records, and staff statements – none of them is exculpatory. They do not contradict or undermine a finding of guilt because the video evidence unequivocally supports the hearing officer's conclusion. While Mr. Martin did not see the video, the Respondent is entitled to withhold it, having argued and shown good cause that its "disclosure would jeopardize the safety and security of the facility." [Filing No. 11 at 5 n.2]; *Piggie*, 344 F.3d at 679 ("[W]e have had no trouble approving of non-disclosure [of video evidence] where prison officials have asserted a bona fide security justification."). In any event, Mr. Martin did receive the Video Review, which is consistent with the video.

Mr. Martin is not entitled to habeas relief on the grounds of denial of the right to present evidence or the withholding of evidence.

### D.     Impartial Decision-Maker

Mr. Martin states that he was denied an impartial decisionmaker because he was "told by [the] hearing officer that she was to find [him] guilty by her superior and the hearing officer was a part of the investigation and made several discriminatory comments before concluding the hearing." [Filing No. 1 at 3.]

9

The Respondent argues that Mr. Martin's claim of a biased decision-maker is "absurd." [Filing No. 11 at 18.] The Respondent states that "[a]n adjudicator is entitled to a presumption of 'honesty and integrity' absent clear evidence to the contrary." [Filing No. 11 at 18.] The Respondent argues that no hearing officer "would tell an incarcerated individual, especially one who files as many federal lawsuits as [Mr.] Martin is known to do, that she is about to violate his rights." [Filing No. 11 at 18.]

Mr. Martin did not file a reply.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A sufficiently impartial decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Beyond a naked assertion that the hearing officer conspired with her superiors to convict him, Mr. Martin offers nothing else – no quotes of allegedly discriminatory statements, no evidence that the hearing officer was part of the investigation, and no reason to doubt the hearing officer's impartiality.

Mr. Martin is not entitled to habeas relief on the ground of having a partial decisionmaker.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge,

10

disciplinary proceedings, or sanctions involved in Mr. Martin's case, and there was no constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr. Martin's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action dismissed. Judgment consistent with this Order shall now issue.

Date: 11/7/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ANTHONY MARTIN
945288
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov